No. 87-244

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

DALLAS O. BROWN,

        Claimant and Appellant,

    -vs-

DONALD AMENT, d/b/a
A & R TRANSPORT,
        Employer,

    and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Whalen & Whalen; Michael J. Whalen, Billings, Montana

    For Respondent:

        Crowley, Haughey, Hanson, Toole & Dietrich; William
J. Mattix, Billings, Montana

Submitted on Briefs: Feb. 4, 1988

Decided: March 18, 1988

Filed: MAR 1 8 1988

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Workers' Compensation Court, before the Honorable Timothy Reardon. Judgment was rendered May 28, 1987 and it was determined that defendant, the State Compensation Insurance Fund, was not liable for the claimant's injury beyond the liability previously accepted and the benefits previously paid. We affirm.

On July 31, 1978, the claimant, Dallas O. Brown, suffered an accidental injury while at work. While unloading bricks from a truck, Brown accidentally fell backwards and injured his back. Both parties agree this injury was an accidental injury arising out of and in the course of employment. Brown's employer at that time was Donald Ament, d/b/a A & R Transport. The employer carried workers' compensation insurance through the State Compensation Insurance Fund at the time of the injury. Liability was accepted for the injury to Brown's back and temporary-total disability benefits were paid starting August 1, 1978 and ending October 27, 1978.

In January of 1986, claimant Brown was diagnosed as having a herniated disk which required surgery. Brown contends there is a causal connection between his back injury sustained on July 31, 1978 and the back problems sustained in 1986, and therefore the State Compensation Insurance Fund is responsible for paying certain Workers' Compensation benefits. The relevant events occurring between these two events are somewhat involved and difficult to trace. This will be addressed in more detail under the first issue discussed in this opinion.

The insurer denied liability and Brown filed a Workers' Compensation petition to resolve the dispute. The Workers'

Compensation Court granted a motion by defendant to bifurcate and trial proceeded as to the issues of liability and claimant's entitlement to temporary total disability. All other issues were dismissed without prejudice to the parties. Trial was held September 16, 1986 and the Workers' Compensation Court entered findings of fact, conclusions of law, and a judgment on May 28, 1987 concluding that "defendant is not liable for claimant's back condition beyond the liability accepted and the benefits paid in 1978."

Appellant raises six issues for our consideration on appeal:

1. Did the Workers' Compensation Court correctly conclude that claimant did not provide sufficient proof to establish a causal link between his 1978 injury and his back condition experienced in 1986?

2. Did the Workers' Compensation Court commit error in refusing to admit certain exhibits into evidence?

3. Did the Workers' Compensation Court commit error in denying an award of attorney's fees and costs to claimant?

4. Is the claimant entitled to temporary-total disability benefits for the three years that he was not working by reason of his physical condition between July 31, 1978 and the time of trial, and also into the future?

5. Is the claimant entitled to be reimbursed, or have paid, the medical expenses incurred by him for treatment of his back injury between July 31, 1978 and the current date, where they have not already been paid by the defendant?

6. Is the claimant entitled to receive a 20% penalty for unreasonable delay or refusal to pay by the defendant?

Our determination of issues one and two will make it unnecessary to determine the remaining issues.

3

1. Causal Connection.

Claimant contends that the back injury diagnosed in 1986 actually began with his injury on July 31, 1978, and that he has experienced one continuous injury with periodic manifestations. Brown states his back problems resulted in the loss of a significant amount of employment from October 1978 to 1986, and that he worked only sporadically for at least seven different employers during that time. Brown contends he lost a total of approximately three years employment due to his back condition. Counsel for Brown states that further workers' compensation claims were not entered because Brown was told he was not eligible for further benefits.

Claimant's precise employment history between October 1978 and 1986 is somewhat difficult to trace and claimant appears to have had mixed reasons for leaving each of his jobs during this time period. Following his accident, Brown first worked on an intermittent basis for P & S Trucking, hauling hay and other various loads. In the spring of 1979, Brown worked a short period for Hi-Ball Trucking and left either because he was terminated or due to a difference of opinion with a dispatcher. Brown then worked for K & S Trucking for approximately six months. He stated he worked exclusively as a driver and was working approximately 70 hours a week. His employment was terminated at K & S Trucking when the business closed. Brown then worked loading trucks for the Coca Cola Company from July 1980 to December 1980. He loaded trucks approximately 38 hours a week and was apparently terminated due to a disagreement with a night manager. Brown then commenced work driving a truck with E.R. Young in January 1981. The job involved little loading or unloading and Brown stated he hired help if he encountered a problem. The employment with E.R. Young lasted approximately

4

one year, and ended when the company sold its trucks. Brown also drove a truck for Robert Ganson for a short period and left over a pay dispute. Finally, claimant worked for H & H Lumber from December 1982 to September 1985. Brown states he left H & H Lumber because he had difficulty performing his job due to his back.

In addition to the above work history, the Workers' Compensation Court entered a thorough statement in its findings of fact regarding claimant's medical history between July 31, 1978 and his injury in 1986. Claimant initially sought chiropractic treatment from Dr. Gary V. Dols on August 2, 1978. Dr. Dols treated claimant a number of times and eventually referred him to Dr. John R. Dorr, an orthopedic surgeon. Dr. Dorr treated claimant on several occasions and prescribed a specially molded seat and a corset to assist claimant in his work. Claimant last visited Dr. Dorr on October 23, 1978 and Dr. Dorr believed it was unlikely claimant would have any permanent physical impairment. Claimant saw Dr. Dols on October 17, 1978 and Dr. Dols noted claimant was doing "fair." After experiencing a strain while stacking hay, claimant again visited Dr. Dols on December 1, 1978.

The claimant did not seek any medical attention for his back from December 1, 1978 to June 18, 1982, at which time he again consulted Dr. Dols. Claimant consulted Dr. Dols four times in June 1982 and four times again in September 1982. Claimant saw Dr. Dols again in June 1983, and the doctor noted claimant was doing rather well. Claimant had a physical exam on January 17, 1984 and the examination report noted a "tender over lumbasac [sic] joint." Dr. Dols was again visited on February 16, 1984 for claimant's back problems. Claimant experienced back pain while assisting in moving a stuck truck and saw Dr. Dols again on September 24

5

and October 15, 1984. There is no claim that claimant sought any medical attention again until January 1986.

On January 18, 1986, Dr. Dols noted that claimant's condition was "far more severe than it had been in the past." Apparently, claimant strained his back while unloading a truck and shoveling snow. Claimant was eventually referred to Dr. Maurice C. Smith, a neurosurgeon. Dr. Smith diagnosed a herniated disc and performed surgery on claimant January 30, 1986. Following the surgery, Dr. Smith stated claimant could not return to work as a truck driver.

In attempting to determine whether claimant's surgery in January 1986 was the result of the injury on July 31, 1978, the Workers' Compensation Court considered deposition testimony by the treating physicians. Dr. Dorr, who treated claimant in September and October of 1978, stated he believed it was unlikely that claimant suffered permanent physical impairment at that time. At his deposition on September 3, 1986, Dr. Dorr stated he had not specifically identified a disk problem in claimant during the treatment. Dr. Dols, the treating chiropractor, was deposed and refused to state that the back problem in 1986 was a direct result of the injury sustained in 1978. Dr. Smith, claimant's surgeon, stated in his deposition that it was "virtually impossible for [him] to state with a degree of medical certainty that the herniated disk that [he] operated on was a direct result of an injury occurring in 1978."

In Rightnour v. Kare-Mor, Inc. (Mont. 1987), 732 P.2d 829, 830-831, 44 St.Rep. 141, 143, we stated:

> The essential element to be proved by a claimant is a direct relationship between the claimant's employment and the injury. Schwartzkopf v. Industrial Accident Board (1967), 149 Mont. 488, 493, 428 P.2d 468, 470. That is, a subsequent injury is compensable if it is the direct and

> natural result of a compensable primary injury, and not the result of an independent intervening cause attributable to the claimant's own intentional conduct. See Breen v. Industrial Accident Board (1968), 150 Mont. 463, 436 P.2d 701. When a subsequent injury is compensable, the claimant is entitled to receive those benefits which are payable because of medical treatment necessitated by the original injury pursuant to § 39-71-407, MCA, and § 39-71-704, MCA, including any medical benefits reserved.

In Rightnour, the claimant's subsequent injury was found compensable because the medical evidence demonstrated, with a reasonable degree of medical certainty, that her subsequent injury was the direct and natural result of her previous injury. The claimant's previous injury was compensable under workers' compensation.

Claimant Brown has the burden of proving a causal connection by a preponderance of the evidence. Evidence demonstrating only a medical possibility "does not mandate the conclusion that the claimant has met his burden of proof under the Act." Currey v. 10 Minute Lube (Mont. 1987), 736 P.2d 113, 116, 44 St.Rep. 790, 793 (citing, Wheeler v. Carlson Transport (Mont. 1985), 704 P.2d 49, 53-54, 42 St.Rep. 1177, 1183). However, evidence demonstrating a medical possibility is acceptable evidence and may be used by the Workers' Compensation Court to support its decision if supported by other independent evidence. Currey, 736 P.2d at 116, 44 St.Rep. at 793.

Both parties have devoted a significant amount of argument as to the standard of our review in regards to medical testimony submitted by deposition. In Currey we stated:

7

> This Court will not substitute its
> judgment for that of the Workers'
> Compensation Court concerning the
> credibility of witnesses nor the weight
> to be given their testimony except where
> critical medical evidence is entered by
> deposition. In cases where depositions
> are the evidence, "this court, although
> sitting in review, is in as good a
> position as the Workers' Compensation
> Court to judge the weight to be given
> such record testimony, as distinguished
> from oral testimony, where the trial
> court actually observes the character and
> demeanor of the witness on the stand."
> Shupert v. Anaconda Aluminum Company
> (Mont. 1985), 696 P.2d 436, 439, 42
> St.Rep. 277, 281-282 citing Hert v. J.J.
> Newberry Co. (1978), 178 Mont. 355, 360,
> 584 P.2d 656, 659.

Currey, 736 P.2d at 115, 44 St.Rep. at 792. This rule remains unchanged.

Following a careful review of the medical testimony submitted by deposition plus the remaining evidence submitted, we find that the Workers' Compensation Court correctly concluded that there was insufficient evidence to establish a causal link between claimant's two injuries. The medical evidence is inconclusive and, at best, establishes only a possibility of a causal link. As noted by the Workers' Compensation Court, this is a difficult case to chart and "too much time has passed without explanation and without a tracing of the injury through that time." Following December 1, 1978, claimant did not seek any medical attention for his back for approximately three and one-half years. The evidence presented fails to sufficiently demonstrate that treatment rendered after that period was a direct result of the injury received in 1978; and the decision of the Workers' Compensation Court is affirmed.

8

2. Evidence.

Claimant contends the Workers' Compensation Judge improperly denied the admission of five exhibits into evidence. Exhibits 1 and 2 consist of correspondence between claimant's attorney and a claims examiner for the insurer. Exhibit 3 is a letter from Dr. Smith's medical secretary to the Workers' Compensation Division notifying the Division of claimant's injury. Exhibit 4 is a "memorandum to file" by Julie McGee noting that claimant requested "that the medical [file] on his July 78 accident be re-opened." Finally, exhibit 10 was denied admission and consisted of a letter from claims examiner Smith to claimant's attorney, accompanied with a "File Routing/Tracking Form" indicating that the Division might have to assume responsibility for the latter injury. Claimant asserts all of these exhibits should have been admitted and relies on statutes governing the Rules of Evidence, including statutes regarding hearsay and its exceptions and limitations.

According to the statutory law in effect at the time of the hearing, the Workers' Compensation Court was not bound by the rules of evidence. Section 39-71-2903, MCA (1985). Although it has no effect on this case, we note this statute has been amended so as to apply the rules of evidence to proceedings in the Workers' Compensation Court. Section 39-71-2903, MCA (1987). Claimant's arguments based on statutes contained within the rules of evidence do not control in this case.

We have stated that it is within the discretion of the Workers' Compensation Judge to accept or reject "hearsay" testimony. Tocco v. City of Great Falls (Mont. 1986), 714 P.2d 160, 166, 43 St.Rep. 310, 318 (citing, Krause v. Sears Roebuck (1982), 197 Mont. 102, 641 P.2d 458). Even if the exhibits had been admitted, claimant would not have

9

sufficiently established a causal connection as discussed in part one of this opinion. We find no abuse of discretion by the Workers' Compensation Court.

For the foregoing reasons, we affirm the decision of the Workers' Compensation Court.

Justice

We concur:

Justices